## FIRST CITY NATIONAL BANK AND TRUST COMPANY, Plaintiff,

v.

## FEDERAL DEPOSIT INSURANCE COMPANY, as receiver for First Inter-County Bank of New York, Tiberiu Horovitz, James Hurtig, Luis Electrical Contracting Corp., Domenico Rabuffo, Roadworks Industries, Inc., Richard Caplan, Georgian Motel Corp., Orval Penrose, Philip Wolitzer, Michael Zinman, Marvin J. Levine, Marvin J. Meyer, Averell H. Fisk, Steven A. Sanders, Paul A. Schwartz, Jack Graff and Bard & Glassman, Defendants.

No. 88 CV 0469.

United States District Court, E.D. New York.

Jan. 16, 1990.

Kraver & Parker, New York City, for plaintiff.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Federal Deposit Ins. Corp. as receiver for First Inter–County Bank of New York.

Rosner & Goodman, New York City, for defendants Tiberiu Horovitz and Philip Wolitzer.

Snitow & Pauley, New York City, for defendants Roadworks Industries, Inc. and Richard Caplan.

LaRossa, Mitchell & Ross, New York City, for defendants Orval Penrose and Georgian Motel Corp.

Jacobs, Persinger & Parker, New York City, for defendant Marvin J. Meyer and Steven A. Sanders.

Gold & Wachtel, New York City, for defendants Michael Zinman, Marvin J. Levine, Paul A. Schwartz and Averell H. Fisk.

Sukenik, Segal & Graff, P.C., New York City, for defendant Jack Graff.

D'Amato & Lynch, New York City, for defendant Bard & Glassman.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendants move pursuant to: (i) Fed.R.Civ.P. 12(b)(6) to dismiss RICO claims under Count One for failure to state an actionable claim; (ii) Fed.R.Civ.P. 12(b)(1) to dismiss common law fraud claims under Count Two for lack of subject matter jurisdiction; (iii) Fed.R.Civ.P. 9(b) to dismiss the Complaint for failure to plead fraud with sufficient particularity; (iv) Fed.R.Civ.P. 12(f) to strike portions of the complaint as immaterial, impertinent or scandalous; (v) Fed.R.Civ.P. 12(g) to amend prior motions; (vi) Fed.R.Civ.P. 21 for misjoinder; (vii) Fed.R.Civ.P. 42(b) for separate trials; and (viii) Fed.R.Civ.P. 11 for sanctions against plaintiff. Plaintiff requests leave to replead in the event portions of the Amended Complaint are dismissed.

## FACTS

On August 8, 1987, Irwin Schiff was assassinated while dining at the Bravo Sergio restaurant in New York City. An investigation into his murder peeled back layers of criminal fraud like the skin of an onion. One of these skins involved First Inter–County Bank of New York ("First Inter–County"), a federally chartered banking association that is owned outright by GHW Associates, a bank holding company. Schiff, a convicted felon, was a partner at GHW who subsequently sold his interest to Domenico Rabuffo, a defendant named in the complaint.

Although Schiff sold his partnership interest in First Inter–County, he apparently never lost his influence. Working through First Inter–County's president, Tiberiu Horovitz, Schiff secured excess financing for various corporations—most of which Schiff controlled through disclosed and undisclosed interests. The investigation into Schiff's murder suggested that he was profoundly corrupt, involved in check kiting, fraud, money laundering and organized crime.

Plaintiff alleges that, for his role in the lending scheme, Horovitz was showered with lavish gifts from clients—a yacht, a chauffeur and car. As president of First Inter–County, Horovitz allegedly sought to spread the costs of this excess financing by encouraging other banks to participate through direct loans or participation agreements.

Plaintiff is a bank. Based upon what it alleges were outright lies and misrepresentations, principally by Horovitz, it lent over two million dollars to two of Schiff's rogue corporations and participated in an existing loan worth one and a half million dollars to a third Schiff corporation, all of which are named as defendants. Because the keystone of Schiff's financing empire, First Inter–County, became insolvent early in 1988, the Federal Deposit Insurance Corpo-

ration ("FDIC") took over as receiver, and it too is a defendant.[1]

In its sixty-six page Amended Complaint, plaintiff First City National Bank and Trust Company ("FCNB") alleges that First Inter–County, its directors, officers and accountants, along with several other First Inter–County clients, committed common law fraud and conducted a fraudulent lending scheme in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The nub of the charge is that, in early summer 1986, the president of First Inter–County, defendant Tiberiu Horovitz, embarked on his elaborate scheme to obtain excess financing from FCNB for three corporate defendants named in the Amended Complaint.

The first corporate defendant, Luis Electrical Contracting Corp. ("Luis Electrical"), is wholly owned by Luis Equipment Corp. ("Luis Equipment"). Defendant Domenico Rabuffo owns 48% of Luis Equipment and he served as the corporation's secretary-treasurer.

The second corporate defendant, Roadworks Industries, Inc. ("Roadworks"), is engaged in leasing luxury automobiles. Defendant Richard Caplan was both president and principal shareholder of Roadworks.

Defendant Georgian Motel Corp. ("Georgian") is the third corporate defendant allegedly involved in the fraud. Defendant Orval Penrose is the principal owner of Georgian, although it is alleged that Rabuffo and Luis Electrical have a multi-million dollar interest in the motel.

The first two corporate defendants borrowed substantial sums directly from FCNB; and the third, Georgian, benefited from FCNB's participation in an existing loan. Upon discovering that all three corporations had fallen behind in scheduled payments, plaintiff notified First Inter–County of the delinquent loans and demanded that First Inter–County repurchase the loans and also repay the amounts bor-

---

**1.** On March 11, 1988, the New York Superintendent of Banks took possession of First Inter–County and appointed the Federal Deposit Insurance Corporation (named as the Federal Deposit Insurance *Company* in the complaint) as receiver. The Amended Complaint named the FDIC in its capacity as receiver as a defendant.

rowed under the participation agreement, as orally promised during earlier negotiations. Soon after, in August 1987, defendant Horovitz allegedly offered Robert Reddington, a senior vice president of plaintiff FCNB, a $30,000 bribe. Amend. Complaint at 39. Subsequently, the loans fell into default, and this action followed.

Most of the remaining defendants are former members of First Inter–County's board of directors. They are defendants Zinman, Levine, Meyer, Fisk, Sanders and Schwartz. The Amended Complaint also names as defendants former Inter–County board chairman Philip Wolitzer, former bank president Jack Graff and former bank vice president James Hurtig. Defendant Bard & Glassman ("B & G"), a certified Public Accounting firm, performed professional services for First Inter–County and for Luis Electrical.

For purposes of these motions the Court must accept as true all factual allegations in the Amended Complaint. *Procter & Gamble Co. v. Big Apple Industrial Bldgs. Inc.*, 879 F.2d 10, 18 (2d Cir.1989). Jurisdiction rests upon a federal question involving the RICO statute and pendent jurisdiction over predicate acts involving common law fraud.

## I. MOTION TO DISMISS RICO CLAIMS

Defendant FDIC, as receiver for First Inter–County, moves to dismiss the entire complaint. All but three remaining defendants—Hurtig, Luis Electrical and Rabuffo—move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Count One of the Amended Complaint for failure to state a claim. Movants argue that FCNB has failed to plead the statutory elements of civil RICO.

RICO prohibits all of the following: (i) using or investing income derived from a pattern of racketeering activity to acquire an interest in an enterprise engaged in interstate commerce, (ii) acquiring or maintaining an interest in an enterprise through a pattern of racketeering activity, (iii) par-

ticipating in the conduct of an enterprise affecting interstate commerce through a pattern of racketeering activity, and (iv) conspiring to do any of the above. 18 U.S.C. § 1962(a)–(d). Predicate acts alleged in the Amended Complaint to establish a pattern of racketeering activity include mail fraud, wire fraud, and commercial bribery. 18 U.S.C. § 1341, 1343; N.Y. Penal Law § 180.03 (McKinney 1988).

### A. Investing Income And Acquiring Interests In A RICO Enterprise

RICO section 1962(a) renders criminally and civilly liable "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest ... such income ... in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in interstate or foreign commerce." 18 U.S.C. § 1962(a). Section 1962(b) proscribes the acquisition of an interest in or control of any such enterprise through a pattern of Racketeering activity.[2] Section 1962 is intended to prevent racketeering activity from infiltrating legitimate business enterprises, as well as to halt the investing or reinvesting of income derived from a pattern of racketeering in illegal enterprises. *See United States v. Turkette*, 452 U.S. 576, 584, 101 S.Ct. 2524, 2529, 69 L.Ed.2d 246 (1981); *Moll v. U.S. Life Title Ins. Co.*, 654 F.Supp. 1012, 1033 (S.D.N.Y.1987).

Under section 1962(a) and (b), plaintiff must allege that defendants invested, acquired or maintained interests in an enterprise through a pattern of racketeering activity. *Bingham v. Zolt*, 683 F.Supp. 965, 971 (S.D.N.Y.1988). Additionally, plaintiff must allege injury to his business or property by reason of the racketeering activity. *Id.* at 971; *Anitora Travel, Inc. v. Lapian*, 677 F.Supp. 209, 218 (S.D.N.Y. 1988); *DeMuro v. E.F. Hutton*, 643 F.Supp. 63, 66 (S.D.N.Y.1986).

**2.** 18 U.S.C. § 1962(b) provides:
 It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Plaintiff makes only conclusory allegations that each defendant violated section 1962(a) and (b). Amend. Complaint at 54–64. Plaintiff does not allege that any defendant invested racketeering income in an enterprise through racketeering activity. *DeMuro*, 643 F.Supp. at 66. Consequently, the Amended Complaint does not state an actionable claim under section 1962(a) and must be dismissed.

FCNB alleges that a pattern of racketeering activity furthered an enterprise's common purpose through arranging "additional financing for Luis Electrical, Roadworks, Georgian and others." Clearly, this constitutes acquisition or maintenance of an interest in or control of an enterprise as required under section 1962(b). Amend. Complaint at 22. The Amended Complaint also alleges that plaintiff suffered a resultant injury in that the loans are now in default. Thus, if it is sufficiently alleged that defendants engaged in a pattern of racketeering activity, as discussed below, I conclude that the Amended Complaint also alleges a sufficient claim for acquiring an interest in an enterprise under section 1962(b).

### B. *Participation In The Conduct Of A RICO Enterprise*

Section 1962(c) prohibits the conduct of an enterprise through a pattern of racketeering activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, —— U.S. ——, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989). Section 1962(c) specifically provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

An "enterprise," includes a union or group of individuals "associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The enterprise is generally *a group of persons* associated together for the common purpose of engaging in a

course of conduct. *Procter & Gamble Co. v. Big Apple Industrial Bldg.*, 879 F.2d at 15. Taken together, defendants' actions in the three transactions—Luis Electrical, Roadworks, and Georgian—demonstrate the "association in fact" needed to establish an enterprise as defined in section 1961(4). Based solely on the pleadings, one may reasonably conclude that defendants Horovitz, Hurtig, Luis Electrical, Rabuffo, Roadworks, Caplan, Georgian and Penrose associated with each other for the common purpose of engaging in a course of conduct—an enterprise.

A pattern of "racketeering activity" is typically a series of criminal acts as defined in section 1961(1). *Procter & Gamble*, 879 F.2d at 15. The racketeering or predicate criminal acts must occur within ten years of each other. 18 U.S.C. § 1961(5). In this case the predicate acts alleged include instances of mail fraud, wire fraud, and attempted bribery. *See* 18 U.S.C. §§ 1341, 1343, 1961(1); N.Y.Penal Law § 180.03 (McKinney 1988). Amend. Complaint at 36, 43–44.

Case law establishes that "for a pattern to exist, the alleged criminal acts should be characterized by their relatedness and continuity." *Procter & Gamble*, 879 F.2d at 15. In *H.J. Inc.* the Court stated that "[f]or analytic purposes these two constituents of RICO's pattern requirement must be stated separately, though in practice their proof will often overlap." 109 S.Ct. at 2900.

Predicate criminal acts are related for RICO purposes when they share similar purposes, results, participants or methods. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). Continuity, on the other hand, "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 109 S.Ct. at 2902. The nature of the enterprise itself may show the threat of continued activity. *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir.) (*en banc*), *cert. denied*, —— U.S. ——, 110

S.Ct. 56, 107 L.Ed.2d 24 (1989). Quite simply, "what is required is that the complaint plead a basis from which it could be inferred that the acts ... were neither isolated nor sporadic." *Beauford v. Helmsley*, 865 F.2d 1386, 1391 (2d Cir.1989) (*en banc*), *vacated on other grounds*, —— U.S. ——, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989). In this case plaintiff has sufficiently pled a related and continuous pattern of racketeering activity under Sections 1962(c) with respect to three distinct, core financing transactions.

In the Luis Electrical transaction, it is alleged that Horovitz and Rabuffo spoke over the telephone and met with FCNB officers in October 1986. Defendants Horovitz and Rabuffo allegedly made a number of fraudulent statements to plaintiff about creditworthiness, and omitted other material facts. Amend. Complaint at 22–25. Relying on these alleged misrepresentations, FCNB advanced $440,000 to Luis Electrical, $440,000 to a man named Rosally and $385,000 to Rabuffo.

The second transaction, involving Roadworks, occurred in February 1987. At the direction of Horovitz, James Hurtig met with FCNB officers to induce FCNB's participation in First Inter–County's loans to Roadworks. Hurtig represented to plaintiff that First Inter–County wanted to continue financing Roadworks, an existing creditworthy customer, but was unable to do so because of short-term liquidity problems. Again relying on defendants' alleged misrepresentations, plaintiff acquired $500,000 of a $902,765.16 note given First Inter–County by Roadworks. Officers of FCNB later extended that note and converted it into a direct loan for $750,000. Amend. Complaint at 29.

In the final transaction, occurring in April 1987, defendants Horovitz and Hurtig spoke to FCNB officers about referring other First Inter–County clients to FCNB, including defendant Georgian. Between April and May defendants allegedly made various misrepresentations, allaying plaintiff's doubts about Georgian's creditworthiness. Amend. Complaint at 32–35. As a result, FCNB acquired a $700,000 participation in First Inter–County's $1.45 million loan to Georgian.

These three transactions arise from a common scheme to defraud plaintiff through excess financing. These same acts may fairly be characterized as continuous because there is a closed period of time stated in the complaint during which repeated misrepresentations allegedly occurred. *See supra H.J. Inc.* and *Indelicato*. Continuity also exists in the sense that the alleged financing scheme, by its nature, "project[ed] into the future with a threat of repetition." *H.J. Inc.*, 109 S.Ct. at 2902. Plaintiff's Amended Complaint alleges involvement of an organized crime figure, Irwin Schiff, and states that the fraudulent scheme "might still be continuing ... had it not been for the murder of Irwin Schiff in August 1987." Amend. Complaint at 1.

The Amended Complaint also charges the accounting firm of Bard & Glassman ("B & G") and members of First Inter–County's Board of Directors—defendants Wolitzer, Zinman, Levine, Meyer, Fisk, Sanders, Schwartz and Graff—with aiding and abetting violations of section 1962(c).

A defendant is guilty of aiding and abetting if he associates with the venture and somehow participates in it showing his intent that it succeed. *United States v. Licursi*, 525 F.2d 1164, 1167 (2d Cir.1975). A defendant must join the venture and further the criminal intent of the principal by engaging in some affirmative conduct that contributes to the success of the venture. *Young v. United States*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987); *United States v. Zambrano*, 776 F.2d 1091, 1097 (2d Cir.1985). Though criminal in nature, these concepts clearly apply to civil RICO where a defendant allegedly aids and abets mail and wire fraud violations. *See Armco Indus. Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475, 485 (5th Cir.1986).

The Amended Complaint does not allege that any of the bank directors had actual knowledge of fraud or bribery, much less the specific intent necessary to commit these crimes. Plaintiff suggests, however,

that knowledge of defendant First Inter-County's affairs must be imputed to the directors, both because of New York State banking law and because of the alleged reckless conduct of board members. Amend. Complaint at 44–45.

The Amended Complaint relies on section 674 of the New York Banking Law which provides, "A director of a corporation or joint-stock association is deemed to have such a knowledge of the affairs of the corporation or association as to enable him to determine whether any act, proceeding or omission of its directors is a violation of this article." N.Y.Banking Law § 674 (McKinney 1971). By its very terms, however, section 674 is limited to violations of article XIII–B of the New York Banking Law. The word "deem" means to "treat as if." *Black's Law Dictionary* 374 (5th ed. 1979). Conceding that in a proceeding under New York State Banking Law a bank director would be "treated as if" he had knowledge, the same result would not follow in a criminal prosecution for mail and wire fraud. To be found liable of aiding and abetting mail or wire fraud—specific intent crimes—a defendant must have shared the principal's criminal intent. *Armco Indus. Credit Corp.*, 782 F.2d at 486.

Courts have consistently held that an unwitting participant in a RICO enterprise is not within the ambit of the statute. *Andreo v. Friedlander*, 660 F.Supp. 1362, 1371 (D.Conn.1987); *Moss v. Morgan Stanley, Inc.*, 553 F.Supp. 1347, 1362 (S.D.N.Y. 1983), *aff'd on other grounds*, 719 F.2d 5 (2d Cir.), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Recklessness is not sufficient to prove the required criminal intent. *Andreo*, 660 F.Supp. at 1370–71 nn. 6–7; *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 639 F.Supp. 1391, 1395–1396 (S.D.N.Y. 1986); *Moss*, 553 F.Supp. at 1362. For purposes of RICO, the Court cannot impute knowledge to the defendant directors. Accordingly, the section 1962(c) claim must be

dismissed against defendants Wolitzer, Zinman, Levine, Meyer, Fisk, Sanders, Schwartz and Graff.

▮ The Amended Complaint also names B & G as a defendant, alleging that the accounting firm aided and abetted the fraudulent financing and had conflicts of interest. Amend. Complaint at 45. The Amended Complaint essentially implies that B & G had knowledge of the financing scheme because it prepared financial statements and had a professional relationship with defendants. These allegations alone, including the allegations of possible conflicts of interest, do not show that B & G aided or abetted any of the alleged predicate acts. *Andreo*, 660 F.Supp. at 1371; *Moss*, 553 F.Supp. at 1326. Accordingly, the section 1962(c) claim must also be dismissed against defendant B & G.

### C. *Rico Conspiracy*

▮ Conspiring to engage in racketeering activity is a crime separate from actual racketeering.[3] To state a claim for RICO conspiracy, plaintiff must allege that each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of the RICO enterprise. Section 1962(d) does not require proof of overt acts. *See United States v. Teitler*, 802 F.2d 606, 613 (2d Cir.1986); *United States v. Ruggiero*, 726 F.2d 913 (2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *Grunwald v. Bornfreund*, 668 F.Supp. 128 (E.D.N.Y.1987); *United States v. Bonanno Organized Crime Family*, 683 F.Supp. 1411 (E.D.N.Y.1988). Conclusory allegations or bare statements, however, will not withstand a motion to dismiss, particularly where the alleged purpose of the conspiracy is to defraud. *Bonanno*, 683 F.Supp. at 1439; *Grunwald*, 668 F.Supp. at 133.

▮ The Amended Complaint fails to state a viable RICO conspiracy claim against defendants B & G, Wolitzer, Zinman, Levine, Meyer, Fisk, Sanders, Schwartz and Graff. Nothing in the

---

**3.** 18 U.S.C. § 1962(d) provides:
It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a)(b), or (c) of this section.

Amended Complaint shows that these defendants agreed to commit two predicate acts in furtherance of the alleged financing scheme. To succeed, plaintiff must show defendants were parties to an unlawful agreement or that defendants, understanding the scope of the enterprise, knowingly agreed to further its affairs through the commission of various offenses. *Morin v. Trupin,* 711 F.Supp. 97, 111 (S.D.N.Y.1989); *Zola v. Gordon,* 685 F.Supp. 354, 377 (S.D.N.Y.1988). Because no such membership or agreement has been shown with respect to the above defendants, I conclude that the Amended Complaint against them must be dismissed.

RICO conspiracy is, however, properly alleged with respect to those defendants directly involved with the three alleged financing schemes—defendants Horovitz, Hurtig, Luis Electrical, Rabuffo, Roadworks, Caplan, Georgian and Penrose. Allegedly, defendants Horovitz and Rabuffo fraudulently encouraged FCNB to finance the Luis Electrical transaction. Amend Complaint at 22–23. In the transactions with Roadworks and Georgian, Horovitz allegedly encouraged Hurtig to help induce FCNB to provide financing. Amend. Complaint at 25, 27. Penrose allegedly misrepresented to FCNB that defendant Rabuffo had no financial interest in Georgian. Amend. Complaint at 35–36. Caplan allegedly bribed Horovitz to act illegally on Roadwork's behalf and forwarded interest payments to lull FCNB into a false sense of security. Amend. Complaint at 28–29, 36. The alleged words and actions of these defendants manifest the necessary agreement to commit predicate acts in furtherance of a common design to defraud.

### D. *The FDIC Motion To Dismiss*

The FDIC, receiver for First Inter-County, moves to dismiss the Amended Complaint under the protections afforded the FDIC by the Supreme Court decision in *D'Oench Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), as later interpreted in *W.T. Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). In *D'Oench* the Supreme Court held that the maker of a promissory note could not assert against federal banking authorities that the maker had a "secret agreement" with the original bank not to repay the note. 315 U.S. at 447, 62 S.Ct. at 676. The *D'Oench* doctrine, adopted at least in part by federal statute,[4] estops a party from asserting any claim against the FDIC based upon oral representations, agreements, or conditions that are not reflected in the books and records of the failed bank. The doctrine is obviously intended to allow bank examiners to rely on bank records when evaluating a bank's assets. *W.T. Langley v. F.D.I.C.,* 484 U.S. 86, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987).

Whether the FDIC learned about the bank's oral misrepresentations before it acquired the bank's notes is irrelevant. *W.T. Langley,* 108 S.Ct. at 402. Thus, "[a]ny oral, collateral agreement which

**4.** 12 U.S.C. § 1823(e) provides:
No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been continuously, from the time of its execution, an official record of the bank.

The statutory shield provided by section 1823(e) basically codifies the *D'Oench* doctrine. *FDIC v. Kuang Hsung Chuang,* 690 F.Supp. 192, 198 n. 6 (S.D.N.Y.1988); *National Credit Union Admin. Bd. v. First Nat'l Bank of Chicago,* 690 F.Supp. 1580, 1582 (N.D.Ill.1988) ("Courts have applied the D'Oench rule to various defenses: secret agreements, usury, fraud in the inducement and failure of consideration."). Technically, section 1823(e) only applies to the FDIC in its individual corporate capacity, *FDIC v. McClanahan,* 795 F.2d 512 (5th Cir.1986). *D'Oench* applies to the FDIC both in its individual corporate capacity and its representative capacity as a receiver. *FDIC v. Langley,* 792 F.2d 541, *aff'd, W.T. Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).

would serve to alter the facial terms of a security or loan document will generally be sufficient to 'tend to deceive' the banking authorities and will not be valid as a defense against the FDIC." *FDIC v. Chuang*, 690 F.Supp. 192, 198 (S.D.N.Y. 1988). Consequently, courts have invoked the *D'Oench* doctrine to defeat prior oral agreements to repurchase loans. *See Texas Nat'l Bank of Lufkin v. FDIC*, No. Mo–84–CA–17 (W.D.Tex. Feb. 14, 1985); *First Nat'l Bank of Clarksville v. FDIC*, No. Mo–83–CA–130 (W.D.Tex. Dec. 19, 1985); *Pittsburgh Nat'l Bank v. FDIC*, No. Mo–84–CA–54 (W.D.Tex. Nov. 6, 1984).

The *D'Oench* estoppel doctrine affords appropriate protections to the FDIC in its capacity as receiver and, consonant with this policy of protection, I am mindful of the argument that "RICO [treble] damages 'are in fact penal. It would be plainly unjust to permit such an award against the receiver for innocent depositors and creditors alone would be punished, not the putative wrongdoer.'" *Beverly Hills Savings v. Highfield Assoc.*, No. 87–CA–259, —— WL —— (D.N.M. Aug. 28, 1987), quoting *Summers v. FDIC*, 592 F.Supp. 1240, 1243 (W.D.Okl.1984). I am satisfied that plaintiff would be unable to state a claim against the FDIC in its capacity as receiver for First Inter–County, and, accordingly, the Amended Complaint against FDIC, as receiver, is dismissed. *See Reiter's Beer Dist. Inc. v. Schmidt Brewing Co.*, 657 F.Supp. 136, 141 (E.D.N.Y.1987); 5 Wright & Miller, *Federal Practice & Procedure* § 1357, at 611–614.

Plaintiff requests leave to add the FDIC as a party in its individual corporate capacity. The Court grants leave to replead, but plaintiff is reminded that a tort action against a federal agency is governed by the Federal Tort Claims Act. 28 U.S.C. § 2671 et seq.; *Rauscher Pierce Refsnes, Inc. v. FDIC*, 789 F.2d 313, 315 (5th Cir.1986). Accordingly, plaintiff must first satisfy the jurisdictional prerequisites, including exhaustion of all administrative remedies. 26 U.S.C. § 2675(a); *see O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842, 855 (2d Cir. 1984).

## II. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

All defendants—except the FDIC, Horovitz, Hurtig, Luis Electrical, Rabuffo and Wolitzer—move to dismiss the common law fraud claim for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1).

Under the doctrine of pendent jurisdiction in a case involving both federal and state law claims, a federal court has jurisdiction over the whole case when a substantial federal claim vests the court with subject matter jurisdiction, and both claims derive from a "common nucleus of operative facts." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Whether or not pendent jurisdiction should be exercised is a matter committed to the sound discretion of the district court. *See Hagans v. Lavine*, 415 U.S. 528, 545, 94 S.Ct. 1372, 1383, 39 L.Ed.2d 577 (1974) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); *Perez v. Ortiz*, 849 F.2d 793, 798 (2d Cir.1988); *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir.1979). Principal considerations are judicial economy and fairness to litigants. *Perez*, 849 F.2d at 798; *Pride v. Community School Bd. of Brooklyn*, 482 F.2d 257, 271–72 (2d Cir. 1973).

Courts will routinely retain pendent jurisdiction over state law offenses that are predicate acts in a valid RICO claim. *See, e.g., H.J. Inc.*, 109 S.Ct. at 2897; 18 U.S.C. § 1961(1). Because sufficient RICO allegations have been made against defendants Horovitz, Hurtig, Luis Electrical, Rabuffo, Roadworks, Caplan, Georgian and Penrose, it is entirely proper to maintain pendent jurisdiction over the common law fraud claims against these defendants.

However, when a plaintiff's RICO claim is the sole basis for pendent jurisdiction over a predicate act, if the RICO claim is dismissed, jurisdiction over the predicate act will generally also collapse. *Corcoran*

*v. American Plan Corp.,* 886 F.2d 16, 22 (2d Cir.1989). Thus, because the RICO claims against all the other defendants are being dismissed it might be expected that the pendent state claims for fraud should also be dismissed. The fact remains, however, that the remaining defendants have state law claims against them that arise out of the same facts involved in the RICO claim and these defendants may well be "pendent parties" over whom the Court may retain jurisdiction.

■ Pendent party jurisdiction is jurisdiction exercised "over parties not named in any claim that is independently cognizable by the federal court." *Finley v. United States,* — U.S. —, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989). Because pendent party jurisdiction involves joinder of a defendant solely on the basis of state law claims "[t]he exercise of jurisdiction over a 'pendent party' is subject to greater constraints than the more common 'pendent claim' jurisdiction." *Bruce v. Martin,* 724 F.Supp. 124, 127 (S.D.N.Y.1989); *see also Aldinger v. Howard,* 427 U.S. 1, 14–15, 96 S.Ct. 2413, 2420–21, 49 L.Ed.2d 276 (1976).

Before exercising pendent party jurisdiction, a federal court must first be satisfied that the demands of Article III, as stated in *Gibbs,* have been met, namely, that the entire action before the Court comprises one constitutional "case." *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138. In *Gibbs* the Supreme Court held that a federal court has the requisite power over a pendent claim when the federal and pendent claims derive from a "common nucleus of operative facts" and a plaintiff bringing the action would ordinarily be expected to try them in one judicial proceeding. *Id.*

Thus, as a threshold matter, I must determine whether the Court has jurisdiction over plaintiff's state law claims. Upon review of the record, I find that all issues, including the state law claims, derive from a common nucleus of operative facts. I also find that plaintiff may be expected to try these claims in one judicial proceeding.

In addition, however, the Court must "pay 'careful attention to the relevant statutory language' granting jurisdiction over the federal claim." *Bruce,* 724 F.Supp. at 127 (citing *Aldinger v. Howard,* 427 U.S. 1, 17, 96 S.Ct. 2413, 2421, 49 L.Ed.2d 276 (1976)). The purpose of this second hurdle is to ascertain whether Congress has initially precluded the exercise of pendent party jurisdiction. *Id.* at 128.

Pendent jurisdiction is implicated in a RICO case by the definition of "racketeering activity" which includes:

> any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year.

18 U.S.C. § 1961(1). Inclusion of state law offenses in the definition of "racketeering activity" is clearly not a plenary grant of jurisdiction.[5]

In *Finley v. United States,* — U.S. —, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), the Court held that there was no pendent jurisdiction under the Federal Tort Claims Act to allow state law claims against a party not named as a defendant under the federal claim. Although it may be argued that the *Finley* holding should be limited to pendent party jurisdiction in a Federal Tort Claims Act context, the Second Circuit has shown no disposition to give *Finley* so stingy a reading and, indeed, has observed that "pendent party jurisdiction apparently is no longer a viable concept." *Staffer v. Bouchard Transpor-*

---

**5.** In *Bruce,* Judge Sweet considered the possibility that Congress might have precluded pendent party jurisdiction under section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. The relevant statutory authority provided:

> The district courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions act law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder ...

Such expansive "equity" jurisdiction under the Securities Exchange Act clearly is broader than the state law "predicate acts" jurisdiction under RICO. Nonetheless, Judge Sweet declined to find pendent party jurisdiction under the statute.

*tation Co.*, 878 F.2d 638, 643 n. 5 (2d Cir.1989) (citing *Finley* in a Jones Act context for the proposition that "where there is no independent basis for federal jurisdiction over the party against whom only a state claim is asserted at the inception of the action, there is no pendent jurisdiction, even where the state claim is closely related to to the federal claim").

 It is not necessary, however, to decide whether pendent party jurisdiction is permissible in this case because there is an independent ground to deny jurisdiction. Weighing the *Gibbs* factors of judicial economy, convenience and fairness to the parties, I find that—even if there be pendent party jurisdiction—here it would be improvident to exercise it in this federal RICO action over those parties now joined solely on state law claims. Accordingly, because the federal claims against the director defendants, B & G and the FDIC are being dismissed, it is appropriate to decline jurisdiction over the state law claims against them, as well. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139; *Cahill v. Arthur Anderson & Co.*, 659 F.Supp. 1115, 1128 (S.D.N.Y.1986), *aff'd* 822 F.2d 14 (2d Cir. 1987).

### III. SUFFICIENCY OF COMPLAINT

 Various defendants move pursuant to Fed.R.Civ.P. 9(b) to dismiss the Amended Complaint for failure to plead fraud with sufficient particularity. Under the Federal Rules "all averments of fraud or mistake ... shall be stated with particularity." Fed.R.Civ.P. 9(b). *See also Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49–51 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *Anitora Travel, Inc. v. Lapian*, 677 F.Supp. 209, 214 (S.D.N.Y.1988). To satisfy Rule 9(b), plaintiff must specify the time, place, speaker and, sometimes, the content of the alleged misrepresentation. *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986). Facts supporting allegations of fraud in a complaint must be specific enough to allow the defendant "a reasonable opportunity to answer the complaint" and provide the defendant with "adequate

information to form a response." *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557–58 (2d Cir.), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

Violations of federal mail and wire fraud statutes, pled in Count One as predicate acts, also require a showing of knowing misrepresentation. *Beck*, 820 F.2d at 49–50; *United States v. Rodolitz*, 786 F.2d 77, 80 (2d Cir.), *cert. denied*, 479 U.S. 826, 107 S.Ct. 102, 93 L.Ed.2d 52 (1986); 18 U.S.C. §§ 1341, 1343. Thus, plaintiff's factual allegations must give rise to a "strong inference" that defendants possessed the specific intent to defraud FCNB. *See Beck*, 820 F.2d at 50. Such intent can be pled with specific allegations of fact that demonstrate a motive and an opportunity to commit fraud. *Id.* Concerning interest payments made "with a view toward lulling FCNB into believing that its loans were properly performing," the Amended Complaint need only show that the mailings furthered a fraudulent scheme, not that the mailings themselves were fraudulent. Amend. Complaint at 36. *See United States v. Murphy*, 768 F.2d 1518, 1529–30 (7th Cir.), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986); *See also New York v. Joseph L. Balkan, Inc.*, 656 F.Supp. 536, 545 (E.D.N.Y.1987); *Beth Israel Med. Ctr. v. Smith*, 576 F.Supp. 1061, 1071 (S.D.N.Y.1983).

 The Amended Complaint describes a financing scheme, headed by Horovitz, to obtain funds by defrauding FCNB. It details the time and place of meetings and telephone conversations between FCNB's officers and the various defendants, cataloguing alleged episodes of misrepresentation. Amend. Complaint at 22–36. I am satisfied that Count One of the Amended Complaint adequately pleads mail and wire fraud.

The elements of common law fraud, as pled under Count Two, are a different matter:

> To prevail on a claim for common law fraud, the plaintiff must prove that the defendants made a false representation of fact, that the defendant made the representation with scienter, that the defen-

dant intended the plaintiff to act or to refrain from acting in reliance on the misrepresentation, that the plaintiff justifiably relied upon the misrepresentation in taking, or refraining from, action, and that the plaintiff sustained pecuniary loss as a result of this reliance. *Aeronca, Inc. v. Gorin*, 561 F.Supp. 370, 373 (S.D.N.Y.1983); *see also Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 250 N.E.2d 214 (1969).

Count Two states all the elements of a claim for common law fraud against the defendants directly involved in the three distinct financing transactions—Horovitz, Hurtig, Luis Electrical, Rabuffo, Roadworks, Caplan, Georgian and Penrose.

## IV. MOTION TO STRIKE

■ Horovitz, joined by Wolitzer and Graff, moves to strike portions of the Amended Complaint as immaterial, impertinent and scandalous. Fed.R.Civ.P. 12(f). Principally, the motions to strike focus on discussion of an organized crime figure, Irwin Schiff, and the purported illegal activity of some defendants.

Unless it is clear that portions of the pleadings "sought to be struck [have] 'no bearing on the subject matter of the litigation and that [their] inclusion will prejudice the defendant, the complaint should remain intact.'" *Grunwald v. Bornfreund*, 668 F.Supp. 128, 133 (E.D.N.Y.1987) (quoting *FRA S.p.A. v. Surg–O–Flex of America, Inc.*, 415 F.Supp. 421, 427 (S.D.N.Y.1976)); *see* 2A J. Moore, *Moore's Federal Practice*, ¶ 12.21[2] at 12–75 (2d ed. 1989). An informed decision on whether or not to strike material in the pleadings, including a determination of relevance, often may not be made until a trial begins to unfold. *Mikropul Corp. v. Desimone & Chaplin–Airtech, Inc.*, 599 F.Supp. 940, 945 (S.D.N.Y. 1984); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir.1976). The Amended Complaint describes Schiff as a central figure in the alleged RICO enterprise and a moving force behind the racketeering activity. Schiff's death allegedly triggered the investigation that exposed the enterprise and related activity. Therefore, at least for now, the motion to strike is denied.

## V. MOTION TO AMEND

■ Defendants Penrose and Georgian move pursuant to Fed.R.Civ.P. 12(g) to amend their prior motion to dismiss the Amended Complaint. These defendants seek to raise the additional ground that the Amended Complaint fails to state a claim because plaintiff lacks standing to sue them.

The Amended Complaint alleges that Penrose made various misrepresentations to FCNB to induce FCNB to participate in an existing loan given Georgian by First Inter–County. As an immediate result, FCNB participated in the Georgian loans. Amend. Complaint at 35–36. Because FCNB made no direct loans to Georgian, defendants argue that FCNB suffered no direct injury and, consequently, has no standing to sue either Georgian or Penrose.

■ The civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore … and shall recover threefold the damages he sustains …" 18 U.S.C. § 1964(c). All that is required for standing is that plaintiff suffer injury in fact and the injury be caused by a RICO violation. *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985). Thus, " 'a defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct,' *but only to anyone whose injuries were caused 'by reason of' a violation of section 1962."* *Sperber v. Boesky*, 849 F.2d 60, 64 (2d Cir.1988) (emphasis added). Injury required to give a plaintiff standing to bring a RICO suit is not limited to damages suffered from the overall RICO violation, but also includes injuries suffered from each predicate act. *Sedima*, 473 U.S. at 479, 105 S.Ct. at 3275; *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1100 (2d Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

As a direct result of Penrose's calculated fraud, plaintiff participated in an existing First Inter–County loan and suffered undeniable consequences. Without the affirmative misrepresentation of defendant Penrose, FCNB would not have participated in the existing loans. I find, therefore, that plaintiff has the requisite standing to sue Penrose and Georgian, and their motions, therefore, are denied.

This conclusion is not contrary, as defendants suggest, to the decision in *Rand v. Anaconda–Ericsson*, 794 F.2d 843 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986), where the Second Circuit held that shareholders of an injured corporation lack standing to bring a claim under civil RICO. *Rand* merely recognized the basic distinction between a corporation and its shareholders and enforced the fundamental rule of corporate law that shareholders must proceed through a derivative action, a situation not present here. *Bankers Trust Co.*, 859 F.2d at 1101.

## VI. MISJOINDER

■ Defendants Meyer and Sanders move to dismiss under Fed.R.Civ.P. 21 because plaintiff added them as defendants without first obtaining leave of Court under Rule 21. It should be noted that under Rule 21 "[m]isjoinder of parties is not ground for dismissal of an action."

Plaintiff responds that it filed an Amended Complaint as of right under Fed.R. Civ.P. 15 and, alternatively, obtained leave of court from Magistrate Chrein. Plaintiff filed the original complaint on February 11, 1989 and filed an Amended Complaint adding defendants on May 23, 1988. The record does not reflect any leave to amend granted by Magistrate Chrein.

Whether additional defendants may be added as a matter of right under Rule 15 or whether leave of Court must be granted under Rule 21 is obscure, particularly when Amended Complaints are filed after removal to a federal court. *See* 3 J. Moore, *Moore's Federal Practice* ¶ 15.07[3] (2d ed. 1989); *Terukuni Kaiun Kaisha v. C.R. Rittenberry & Assoc.*, 454 F.Supp. 418, 419 fn. 1 (S.D.N.Y.1978). Recent decisions in this circuit, however, favor liberal application of Rule 15 to permit joinder of additional defendants. *See e.g., Pepsico, Inc. v. Wendy's Int'l, Inc.*, 118 F.R.D. 38, 44 (S.D. N.Y.1987) ("The policy of the Federal Rules promoting 'the just, speedy, and inexpensive determination of every action' . . . would be frustrated by favoring Rule 21 over Rule 15(a) without substantial reason.").

In *Washington v. New York City Bd. of Estimates*, 709 F.2d 792 (2d Cir.), *cert. denied*, 464 U.S. 1013, 104 S.Ct. 537, 78 L.Ed.2d 717 (1984), the district court denied plaintiff permission to amend the caption of the complaint to add two additional defendants. Reversing, the Second Circuit noted that "Washington was entitled . . . to amend his complaint as a matter of right, and his request at that time should have been granted." *Id.* at 795.

In this case between the filing of the original and amended complaints defendants filed only motions to dismiss. Such motions do not constitute responsive pleadings. 3 J. Moore, *Moore's Federal Practice* ¶ 15.07[2] (2d ed. 1989). Under Rule 15, therefore, plaintiff had the right to Amend its Complaint without leave, and this court finds that the joinder of Meyer and Sanders as defendants was equally proper.

## VII. SEPARATE TRIALS

■ Although they make no mention of it in their notice or amended notice of motion, defendants Georgian and Penrose tack on a motion for separate trials at the end of their memorandum of law. Fed.R.Civ.P. 21 and 42(b).

Because Georgian and Penrose are alleged to have directly participated with Horovitz, Luis Electrical, Rabuffo, Roadworks and Caplan in the plan to defraud FCNB, a joint trial is called for. The motion for a separate trial is denied. Fed.R.Civ.P. 42(b). *Cf. United States v. Attanasio*, 870 F.2d 809, 814–15 (2d Cir.1989); *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir.1988).

## VIII. RULE 11 SANCTIONS

Defendants Georgian, Penrose and Graff move for sanctions pursuant to Fed. R.Civ.P. 11. These motions are denied. I am satisfied that the Amended Complaint is grounded in fact and based upon a good faith argument of law. Given the current constant state of flux surrounding RICO, I do not find the Amended Complaint to be frivolous.

## CONCLUSION

In summary, the motions to dismiss the Amended Complaint by defendants Horovitz, Roadworks, Caplan, Georgian and Penrose are granted in part and denied in part. The motions to dismiss by defendants Wolitzer,[6] Zinman, Levine, Meyer, Fisk, Sanders, Schwartz, Graff and B & G are granted. Dismissal is without prejudice, and plaintiff is granted leave to amend, consistent with this Order, within twenty days. The motions to dismiss by defendant FDIC, in its capacity as receiver for First Inter–County, is granted and this dismissal is with prejudice. The motions to strike portions of the Amended Complaint, to amend prior motions, for misjoinder and for separate trials are denied. Finally, the motions for Rule 11 sanctions are also denied.

SO ORDERED.

---

**6.** Plaintiff asserts that Wolitzer's presence at a meeting in which Horovitz allegedly attempted to bribe an FDIC official establishes his association and participation in the criminal enterprise. Amend. Complaint at 39. There is, however, no allegation that Wolitzer committed or agreed to commit any other racketeering act so as to constitute a pattern. To state a claim for RICO conspiracy, plaintiff must allege that each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of the RICO enterprise. *Grunwald v. Bornfreund,* 668 F.Supp. 128, 133 (E.D.N.Y.1987).