**Yudah GRUNWALD, Plaintiff,**

v.

**Ben Zion BORNFREUND et al., Defendants.**

No. CV–85–3338.

United States District Court,
E.D. New York.

July 9, 1987.

Weg & Myers, P.C. by Frank Weg, New York City, for plaintiff.

Shea & Gould by Leon Gold, New York City, for Community Nat'l Bank.

Meissner, Tisch & Kleinberg by Richard A. Finkel, New York City, for Bobober Yeshiva and Naftali Halberstam.

Slotnick & Cutler (Michael Shapiro, of counsel), New York City, for Ben Zion Borenfreund.

Rappaport & Frost by Louis I. Albert, New York City, for Chaim Borenfreund.

Joseph H. Neimann, New York City, for Jacob Banda.

Strook & Strook & Lavan by James Falick, Rabin & Sirota by Howard B. Sirota, New York City, for Bodner & Obstfeld, Brown Knapp & Co.

Todtman, Hoffman, Epstein, Young, Goldstein, Tunick & Pollok by Edward Gasthalter, Hoffman, Pollok & Gasthalter by Edward Gasthalter, New York City, for Saul Hutterer.

Reuben Blum, New York City, for Gems of World, Tema & N. Guarary.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Plaintiff, Yudah Grunwald, brings this action against nineteen named defendants and thirty-one "John Does," alleging that defendants engaged in an elaborate scheme to defraud him by inducing him to invest money under the pretext that the funds would be invested in legitimate diamond deals. Liability against all of the defendants is premised on the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962(b), (c) and (d), as well as New York Gen. Bus. Law § 349, common law conspiracy and fraud. Two additional claims to collect on promissory notes valued at $1,000,000 and $238,000 are alleged against defendants Samuel Solomon Obstfeld and Brown Knapp & Co., respectively.

The essence of the complaint, although presented in 68 pages with 65 pages of exhibits, is clear. Beginning in 1981–82, plaintiff entered into a personal and business relationship with defendant Ben Zion Bornfreund, who at the time was in the diamond business. As part of this relationship, plaintiff entrusted to Bornfreund considerable sums of money ostensibly for the purpose of investing in legitimate diamond deals. Rather than invest the funds, Bornfreund, in conjunction with the other defendants, diverted the funds for their own use. As part of their scheme, defendants allegedly engaged in a series of elaborate banking transactions involving fictitious names, forged checks, foreign bank accounts and thousands of transfers of funds in an effort to "launder" and "kite" plaintiff's money. As a result of this scheme, plaintiff claims to have been defrauded of over $10 million.

Plaintiff commenced the present action on September 9, 1985. In October 1985 plaintiff amended the complaint as of right to assert additional causes of action against defendants Obstfeld and Brown Knapp on the promissory notes as well as to include defendant Community National Bank ("CNB") as a defendant. Thereafter, various defendants moved to dismiss the first amended complaint for failure to state a cause of action and for failure to plead fraud with particularity. The case was reassigned from Judge Costantino to the undersigned, and plaintiff moved for permission to file an amended complaint. By Memorandum and Order dated November 26, 1986, this Court granted plaintiff's motion and deferred decision on defendants' motions to dismiss.

Renewing their dismissal motions, defendant CNB, Obstfeld, Bodner, Brown Knapp, Halberstam, Bobover Yeshiva Bnei Zion ("BYBZ"), Hutterer, and Bornfreund all move to dismiss the RICO claims pursuant to Rule 9(b) for failure to plead fraud with particularity. Alternatively, defendants request a more definite statement pursuant to Rule 12(e) and that certain portions of the complaint be stricken pursuant to Rule 12(f). In addition, defendants CNB, Halberstam and BYBZ moved to dismiss for failure to state a claim under Rule 12(b)(6).

## DISCUSSION

■ Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, when a complaint alleges fraud as a predicate act in a RICO action, it must meet the requirements of 9(b) with respect to the underlying racketeering acts. *See Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49 (2d Cir.1987); *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 18–19 (2d Cir.1983). This means that the complaint must state the time, place, and content of the misrepresentation, the person responsible for making the misrepresentation or omission, and what was given up as a consequence of the fraud. *Whitbread (US) Holdings, Inc. v. Baron Philippe de Rothschild, S.A.*, 630 F.Supp. 972, 982 (S.D.N.Y.1986); 2A J. Moore, *Moore's Federal Practice* ¶ 9.03, at 9–20 to 9–24 (2d ed. 1986). Further, while knowledge or intent may be averred generally, the complaint must allege a sufficient factual basis to support an inference of scienter. *Beck, supra,* at 49–51. "These factual allegations must give rise to a 'strong inference' that the defendants pos-

sessed the requisite fraudulent intent." *Id.* at 50.

Beyond protecting a defendant's reputation and preventing strike suits, Rule 9(b) serves to ensure that the defendant is given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545, 557 (2d Cir.1979); *Denny v. Barber,* 576 F.2d 465, 496 (2d Cir.1978). In serving these goals, however, Rule 9(b) must be harmonized with the parallel provisions of Rule 8 which require that the pleadings contain a "short plain statement of the claim" and which prohibit the pleading of evidentiary matter. *See Ross, supra,* 607 F.2d at 557 n. 20.

■ Although defendants challenge the sufficiency of the pleadings in general, the thrust of each defendant's motion is that fraud has not been adequately alleged with respect to their own participation in the alleged scheme. In actions involving multiple defendants, Rule 9(b) requires the plaintiff to plead facts from which fraud may be reasonably inferred as to each defendant. *See, e.g., Dannenberg v. Dorison,* 603 F.Supp. 1238, 1241 (S.D.N.Y.1985). However, pleading requirements may be relaxed when the information is exclusively within the defendant's knowledge so long as the factual basis for allegations based upon information and belief are adequately set forth. *Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986); *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir. 1974).

■ Turning first to defendant Bornfreund, who appears to be the alleged mastermind of the scheme, it is clear that Rule 9(b) has been satisfied. At numerous points in the complaint, it is alleged that Bornfreund falsely stated to plaintiff that his money was being invested in legitimate diamond deals. There are also allegations that, when plaintiff became suspicious, his fears were allayed by false representations that Bornfreund and others would make good any losses. Complaint ¶ 57. While the precise content or dates of these misrepresentations is not as clear as it might be, it is adequate to give defendant notice of the claim against him. Moreover, the fact that the complaint fails to detail the dates and content of each instance of mail or wire fraud does not render the complaint deficient since plaintiff has specified the nature and operation of the scheme and the exact dates and amounts of money of the banking transactions made in furtherance of the fraudulent scheme. *See City of New York v. Joseph L. Balkan, Inc.,* 656 F.Supp. 536, 545–56 (E.D.N.Y.1987); *Beth Israel Medical Center v. Smith,* 576 F.Supp. 1061 (S.D.N.Y.1983). For example, in addition to identifying dates and amounts in the body of the complaint, plaintiff has attached 29 exhibits to the complaint identifying specific banking transactions allegedly made in furtherance of the scheme to defraud plaintiff. With regard to defendant Bornfreund, Exhibit 2 is particularly noteworthy since it contains a list including dates, names, and amounts of over 100 checks or notes allegedly forged by Bornfreund.

The complaint is also sufficient with respect to defendants Obstfeld, Bodner, and Brown Knapp. Prior to any dealings with plaintiff, the complaint alleges that Bornfreund and Obstfeld were partners in the diamond business. Obstfeld eventually left this partnership to enter the securities business where he became associated with Bodner. While still in touch with Bornfreund and allegedly with funds stolen by Bornfreund, Obstfeld and Bodner together purchased Brown Knapp, a small securities firm. According to the complaint, defendant Obstfeld, Bodner, and Brown Knapp, acting in concert with Bornfreund and with knowledge that the funds supplied by Bornfreund were obtained by false pretenses, engaged in an elaborate kiting scheme with plaintiff's money. To support these allegations plaintiff lists hundreds of checks flowing in and out of defendants' hands, either originating or returning to Bornfreund. There are also allegations, mentioned above, that Obstfeld and Bodner represented to plaintiff on several occasions that they, as well as Brown Knapp would make good any losses. In particular, plaintiff alleges that in August 1985

Obstfeld admitted the existence of their scheme, stating that the funds were secreted in Brown Knapp under different names and that time was needed to disgorge the funds. To hold plaintiff at bay, Obstfeld and Brown Knapp then executed the notes for $1,000,000 and $238,000, respectively. Clearly, these allegations are sufficient to support an inference of scienter and to provide these defendants with notice of the claims against them.

With respect to defendants BYBZ, an orthodox Jewish school, and Halberstam, said to be the son of the Grand Chief Rabbi of the Bobover Chassidic community, the complaint alleges that Halberstam, in connection with Obstfeld and Bornfreund, used BYBZ's and his own bank accounts in furtherance of the scheme to defraud plaintiff. To support these claims, plaintiff lists dozens of checks transferring funds back and forth between the Yeshiva, Halberstam, and Bornfreund, two of these checks being made out to a fictitious person allegedly made up by Bornfreund. *See* Complaint ¶ 78, Exhibits 10, 11. In addition, paragraph 58 of the complaint alleges that Halberstam and BYBZ executed checks made payable to plaintiff "in an attempt to lull plaintiff into inaction and a false sense of security." Exhibit 27 lists several of these checks which allegedly were drawn on insufficient funds. Again, these objections are sufficient to meet the requirements of Rule 9(b).

With respect to Hutterer, a wealthy Belgian merchant, the complaint alleges that he became associated with Bornfreund, Bodner, Obstfeld, and Halberstam as a congregant at the Yeshiva. Acting principally in concert with Bornfreund, as well as Bornfreund's brother, who is also named as a defendant but does not have a motion before the Court, Hutterer allegedly opened up bank accounts, formed dummy corporations, and lent his own financial and corporate resources in furtherance of the scheme. Exhibit 23 of the complaint purports to list 56 checks and notes of plaintiff totalling over $3.5 million made payable to Hutterer allegedly under false pretenses.

Exhibit 24 also lists a check for $48,000 that plaintiff claims Hutterer forged or caused to be forged. In response, Hutterer claims to have been the victim of Bornfreund's fraud himself. Whether or not this is true, plaintiff has alleged sufficient facts from which to infer Hutterer's participation in and knowledge of the scheme.

Turning next to defendant Banda, the complaint states that he was drawn into the scheme as Bornfreund's brother-in-law. Although the allegations regarding his participation are perhaps the least detailed of all of the allegations against the individual defendants, the Court still finds that they satisfy Rule 9(b). The complaint alleges that in an effort to forestall plaintiff from going to the authorities in July 1985 Banda wrote three checks payable to plaintiff totalling $300,000, each of which were dishonored by Banda's bank. In addition, there are allegations that Banda made numerous representations that Bornfreund, Obstfeld, Brown Knapp, and himself would make good on all of plaintiff's losses. Finally, Exhibit 8 lists a total of twelve checks from Bornfreund as evidence of Banda's participation in the scheme.

The complaint alleges in paragraph 51 that defendant CNB participated in the fraudulent scheme by virtue of the fact that many of the alleged banking transactions involved CNB accounts.

Unlike the allegations against the other defendants, these claims fail to satisfy Rule 9(b). The essence of plaintiff's claim against CNB is that, but for the bank's failure to comply with federal reporting requirements with regard to large cash transactions or uncover the fact that certain of plaintiff's checks were made out to fictitious payees, the scheme would have been uncovered sooner. Absent, however, are any allegations that any employee of CNB either fraudulently induced plaintiff to part with his money or attempted to placate plaintiff by any means or representations. Nor are there any allegations that CNB or any of its employees sought to benefit by facilitating the alleged scheme.[1]

1. Elsewhere in the complaint, plaintiff fails to

include CNB among the twelve defendants who

In the absence of factual allegations showing motive, the burden of pleading circumstantial allegations indicating conscious misconduct is that much greater. *See Beck, supra,* at 50. Here, plaintiff has failed to meet this burden since the allegations against CNB fail to give rise to an inference, strong or otherwise, that CNB, acting as either a principal or aider and abettor, participated in the alleged scheme with knowledge that any of defendants' funds had been or were being obtained from plaintiff by fraudulent means.

■ Accordingly, CNB's motion to dismiss plaintiff's fraud claims, including the substantive RICO claims, must be granted. Moreover, for the same reason, plaintiff's claim against CNB for conspiracy to violate RICO under § 1962(d) must also be dismissed. An essential element of any claim under § 1962(d) is that each defendant, by his words or actions, objectively manifested an agreement to commit two or more predicate crimes in furtherance of a scheme to defraud in violation of one of the substantive provisions of § 1962. *See Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 792 n. 8 (3d Cir.1984); *United States v. Melton,* 689 F.2d 679, 683 (7th Cir.1982). However, bare allegations of "conspiracy," like "fraud," are insufficient to support a civil RICO claim, *see Chambers Development Co., Inc. v. Browning-Ferris Indus.,* 590 F.Supp. 1528, 1538 (W.D.Pa.1984), particularly where the alleged purpose of the conspiracy is to defraud. *Id.; Van Schaick v. Church of Scientology of California, Inc.,* 535 F.Supp. 1125, 1141 (D.Mass.1982). Since plaintiff has pleaded no facts to support a claim that CNB knowingly agreed to participate in a scheme to defraud plaintiff, the RICO conspiracy claim against CNB must be dismissed as well.

Since plaintiff has already engaged in some discovery of CNB through non-party subpoenas, it is appropriate to allow plaintiff to file an amended complaint within thirty days of the date of this decision to

set forth any additional information gleaned from this discovery to remedy the defects of the present pleading.

As for the remaining defendants, their motion to dismiss under Rule 9(b) is denied. Furthermore, since defendants' Rule 12(e) motion for a more definite statement is merely a rehash of their 9(b) motion, it also must be denied. While it is true that the complaint may not be as clearly drafted as defendants might desire, it is not so inartful that defendants "cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e).

Similarly, defendants' motion to strike certain portions of the complaint, approximately a third of its contents, is denied. Unless it is clear that the portion of the pleading sought to be struck has "no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendant, the complaint should remain intact." *FRA S.p.A. v. Surg-O-Flex of America, Inc.,* 415 F.Supp. 421, 427 (S.D.N.Y.1976); 2A J. Moore, *supra,* ¶ 12.21[2] at 12–175 to 12–177. Defendants have not met this burden with respect to any portion of the complaint.

■ Finally, defendants Halberstam and BYBZ have also moved to dismiss the substantive RICO claims for failure to allege an enterprise within the meaning of § 1961 (4).[2] They also challenge the sufficiency of the RICO conspiracy claim.

The complaint pleads five alternative RICO enterprises. For purposes of resolving defendants Halberstam and BYBZ's motion, it is only necessary to discuss the association-in-fact theory, which the complaint describes as follows:

"The defendants Bornfreund, Obstfeld, Hutterer, Banda, Bodner, Chaim, Brown Knapp & Co., Igud, Andit, S.B. Capital Corp., BYBZ, Halberstam, CNB, Euro-American, Quality and Kraus are also a group of individuals, corporations, partnerships and entities, who associated in fact with and for the purposes of engaging in the schemes heretofore alleged

allegedly benefited from the fraudulent scheme.

**2.** CNB also raised several objections to the RICO counts under Rule 12(b)(6). However, since

plaintiff is permitted to amend the complaint, the Court need not address at this time CNB's motion to dismiss for failure to state a claim.

and profiting and/or benefiting thereby, each of which associated group constitutes an 'enterprise' within the meaning of 18 U.S.C. [§§] 1961(4) and 1962(b) and (c). Said defendants as groups in fact engage in interstate and foreign commerce. Each such combination constituting a group in fact constitutes an 'enterprise' within the meaning of the cited statutes."

Complaint ¶ 88.

As recently stated by the Second Circuit Court of Appeals:

"An [association-in-fact] enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct' and 'is proved by evidence of an *ongoing organization*, formal or informal, and by evidence that the various associates function as a *continuing unit.*' *United States v. Turkette*, 452 U.S. 576, 583 [101 S.Ct. 2524, 2528, 69 L.Ed.2d 246] ... (1981). This circuit requires that, under section 1962(c), the enterprise be a *continuing operation* and that the [predicate] acts be related to the common purpose."

*Beck, supra*, at 51 (quoting *United States v. Ianniello*, 808 F.2d 184, 191 (2d Cir. 1986)) (emphasis in original). Here, the complaint alleges that defendants associated together for the common purpose of engaging in an elaborate laundering and check kiting scheme with funds fraudulently obtained from plaintiff. As evidence of the group's continuity of structure and personnel, plaintiff has pleaded detailed factual allegations showing literally hundreds of banking transactions over the course of several years with Bornfreund operating as the group's hub. Given the necessary continuity of structure and personnel required to conduct the ongoing banking schemes, plaintiff has adequately pleaded an association-in-fact. *See United States v. Lemm*, 680 F.2d 1193, 1198–1201 (8th Cir.1982); *see also Moss v. Morgan Stanley, supra*, 719 F.2d at 21–22.

Moreover, with respect to defendants Halberstam and BYBZ in particular, the complaint provides sufficient allegations concerning each defendant's involvement in the affairs of the enterprise to survive a motion to dismiss. In order to allege a violation of § 1962(c), it is necessary to assert that the defendant was both "employed by or associated with" the enterprise and that the defendant participated, either directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity. *See United States v. Scotto*, 641 F.2d 47, 54 (2d Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981); *United States v. Bright*, 630 F.2d 804, 830–31 (5th Cir.1980). As discussed above in connection with their Rule 9(b) motion, the complaint alleges with supporting facts that Halberstam and BYBZ performed at least two predicate acts of mail or wire fraud as well as participated in the conduct of the affairs of an enterprise through the commission of these predicate acts. For pleading purposes, RICO requires no more.[3]

Similarly, the complaint adequately pleads a RICO conspiracy claim against Halberstam and BYBZ. While it is true that the complaint, which merely tracks the statutory language, charges the defendants as a group with conspiracy, read as a whole, the complaint alleges more than mere bare allegations supporting the claim that defendants Halberstam and BYBZ objectively manifested an agreement to participate in the enterprise through predicate acts.

Accordingly, except for CNB, defendants' motions to dismiss the complaint are denied. CNB's motion to dismiss is granted, and plaintiff has 30 days in which to file an amended complaint.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.

---

3. The complaint also charges each defendant with a violation of § 1962(b). However, neither Halberstam nor BYBZ challenges the sufficien-

cy of these claims, and the Court expresses no view on their validity.