DGM INVESTMENTS, INC., Plaintiff,

v.

NEW YORK FUTURES EXCHANGE, INC., Board of Trade of the City of New York, Inc., New York Futures Exchange Settlement Committee and its Members Being "Richard Roes" No. 1–10, the New York Clearing Corporation, and "John Does" No. 1–50,

Individually, and as Agents and Representatives of the New York Futures Exchange, Inc., Board of Trade of the City of New York, Inc. and the New York Clearing Corporation, Defendants.

No. 01 Civ. 11602 (RWS).

United States District Court,
S.D. New York.

Oct. 23, 2003.

Lacher & Lovell–Taylor, New York City, By: Michael A. Lacher, Adam J. Rader, of counsel, for Plaintiff.

Cadwalader, Wickersham & Taft, New York City, By: Howard R. Hawkins, Jr., Edmund R. Schroeder, Mary Elizabeth Taylor, Frank J. Scaturro, of counsel, for Nybot Defendants.

## OPINION

SWEET, District Judge.

The defendants New York Futures Exchange, Inc., Board of Trade of the City of New York, Inc., New York Clearing Corporation, and the New York Futures Exchange Settlement Committee and its Members, except for Norman Eisler (collectively, the "NYBOT Defendants"), have moved under S.D.N.Y. Local Civil Rule 6.3 and Fed.R.Civ.P. 60(a), for reconsideration, correction, or clarification of the Court's May 27, 2003 opinion and order. *See DGM v. New York Futures Exch.,* 265 F.Supp.2d 254 (S.D.N.Y.2003) (*"DGM I"* or the "Opinion"). In the alternative, the NYBOT Defendants request certification of the Opinion for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). For the reasons set forth below, the motion is denied.

### Prior Proceedings

In December 2001, plaintiff DGM initially commenced this action for damages sustained as a result of a manipulation of settlement prices. The NYBOT Defendants moved to dismiss this complaint, and their motion was granted on October 17, 2002. On May 13, 2002, while this initial motion to dismiss was pending, other plaintiffs filed a separate action that was stayed, pending decision on the motion to dismiss.

By agreement of the parties, plaintiffs subsequently consolidated the two actions

and filed an amended consolidated complaint on December 20, 2002. The NYBOT Defendants then moved to dismiss this new complaint pursuant to Fed. R.Civ.P. 12(b)(6) and 9(b) and the doctrine of law of the case. In *DGM I,* the NYBOT Defendants' motion was denied for all defendants, but granted as to DGM's claims against them.

The instant motion was marked fully submitted on July 2, 2003.

### The Parties

According to the complaint, plaintiff DGM is a Nevada corporation that "operated a fund" that engaged in commodity transactions. (Compl.¶ 3.) It was the General Partner and/or Managing Member of the remaining plaintiffs. *Id.*

Defendant Board of Trade of the City of New York, Inc. ("NYBOT") is a New York not-for-profit corporation. (Compl. ¶ 11.) NYBOT is the ultimate parent company of defendant New York Clearing Corporation ("NYCC") and defendant New York Futures Exchange, Inc. ("NYFE"). (Compl.¶ 14.) Defendant NYFE, a New York corporation, is a futures and options exchange designated by the U.S. Commodity Futures Trading Commission (the "CFTC") as a contract market for the trading of various commodity futures and options, including the Pacific Stock Exchange Technology Index Futures Contracts and Options ("P–Tech Futures and Options"). (Compl.¶¶ 10, 17.) Defendant NYCC, a New York corporation is the designated clearing-house of NYBOT's exchange markets, including NYFE. (Compl.¶¶ 18, 32.) The New York Futures Exchange Settlement Committee ("Settlement Committee") was made up of individuals appointed by NYFE and was responsible for calculating settlement prices of the P–Tech Futures and Options contracts. (Compl.¶ 12.) During the period relevant to the complaint, Norman Eisler ("Eisler") was the Chairman of NYFE and the Settlement Committee. *Id.*

### The Complaint

According to the complaint, on or about April 1996, NYFE opened trading in P–Tech Futures and Options contracts. The P–Tech Futures and Options were based on a composite index of 100 technology stocks compiled by the Pacific Stock Exchange. (Compl.¶ 17.) The Complaint alleges that for at least August 1999 through on or about May 15, 2000, Eisler, the Settlement Committee, and NYFE manipulated the market by periodically setting the settlement prices for transactions in options on the P-tech Futures contract market at an artificial level in order to benefit themselves and others. (Compl.¶ 23.) Eisler created these artificial settlement prices while acting for the NYBOT Defendants in his capacity as their agent. (Compl.¶¶ 30, 49, 55–56.)

The NYBOT Defendants, through their Directors and Officers and members, both had knowledge of the price manipulation and, with reckless disregard of their obligations, avoided acquiring such knowledge. (Compl.¶¶ 42–44, 61, 76.) At least six board members of NYFE and, upon information and belief, board members of the other Defendants, traded the P–Tech for their own accounts or an account controlled by one or more of them. They thus had a personal interest in the P–Tech Futures Options contract market. (Compl. ¶¶ 62, 79; Goodwin Aff.)

The NYBOT Defendants concealed the systematic and fraudulent manipulation of settlement prices of P–Tech futures and options. (Compl.¶ 41.) They did this in bad faith and for ulterior motives. They hoped to avoid condemnation and exposure by the New York Clearing Corporation ("NYCC"), which would have to assess the other members of NYBOT for the shortfall

in Eisler's and others' accounts, and they hoped to perpetuate themselves in office. (Compl.¶¶ 63–64, 80–81.)

NYFE became aware of complaints about false settlement prices and failed to take any action to end the manipulation, and to enforce NYFE rules governing methods used to settle P-tech Option contract prices. (Compl.¶ 27.) Specifically, the complaint alleges that the NYBOT Defendants failed to enforce NYFE Rule 315 adequately, which regulates determination of settlement prices. *Id.*

The manipulation of settlement prices resulted in margin calls on plaintiffs' accounts and caused DGM to lose its capital and to wind up its affairs. (Compl.¶¶ 33–36.)

Plaintiffs brought the following claims against the NYBOT Defendants:

1) bad faith manipulation of market prices and violation of NYFE Rule 315 in violation of the CEA (Compl. at 13),

2) bad faith cover-up of manipulation of market prices in violation of the CEA (Compl. at 16),

3) bad faith failure to maintain a stable and objective contract market and bad faith failure to enforce NYFE Rule 315 in violation of the CEA (Compl. at 18),

4) fraud, false reporting and deception in violation of the CEA (Compl. at 22),

5) gross negligence and bad faith (Compl. at 23),

6) *respondeat superior* (Compl. at 24).

## I. *Motion for Reconsideration*

### *Reconsideration Standard*

A motion for reconsideration "is appropriate where a court overlooks 'controlling decisions or factual matters that were put before it on the underlying motion … and which, had they been considered, might have reasonably altered the result before the court.'" *Banco de Seguros Del Estado v. Mut. Marine Offices, Inc.*, 230 F.Supp.2d 427, 428 (S.D.N.Y. 2002) (*quoting Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F.Supp.2d 390, 392 (S.D.N.Y.2000)). "The standard for granting … a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). "[A] motion for reconsideration may be granted to 'correct a clear error or prevent manifest injustice.'" *Banco*, 230 F.Supp.2d at 428 (*quoting Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y. 1999)). However, this must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Dellefave v. Access Temps., Inc.*, No. 99 Civ. 6098, 2001 WL 286771, 2001 U.S. Dist. LEXIS 3165 (S.D.N.Y. Mar. 21, 2001).

The NYBOT Defendants fail to meet this standard by neither "point[ing] to controlling decisions or data that the court overlooked," *Shrader*, 70 F.3d at 257, nor showing that reconsideration is necessary in order to "correct a clear error or prevent manifest injustice." *Banco*, 230 F.Supp.2d at 428. However, even if the NYBOT Defendants were to meet the burden of proof for reconsideration, their argument fails on the merits.

### A. *CEA § 25(b) Does Not Preclude Liability through Agency*

The NYBOT Defendants argue that the Court's finding that the acts of the

Eisler, as an agent, can be imputed to NYFE and the Settlement Committee is contrary to the statutory requirements of CEA § 25(b). The Opinion states:

> [E]ven if the NYBOT Defendants never participated or even knew about Eisler's acts, they are strictly liable for them as long as Eisler served as their agent.[1] The Complaint alleges that Eisler acted within the scope of his duties and position as Chairman of NYFE and NYFE's Settlement Committee, when he intentionally created artificial settlement prices and purposely disregarded the appropriate settlement procedures set forth in NYFE Rule 315 in order to benefit accounts controlled by him and other. (Compl. at 49, 51.) Thus, as an agent of NYFE and the Settlement Committee, Eisler's bad faith is attributable to them.

*DGM I* at 262.

Agency principles are applicable pursuant to Section 2(a)(1)(B) of the CEA, which provides:

> The act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as official, agent, or other person.

7 U.S.C. § 2(a)(1)(B).

The NYBOT Defendants, however, argue that CEA § 25(b)(4) overrides § 2(a)(1)(B) in private rights of action, and

thus CEA § 2(a)(1)(B) is only effective in public enforcement actions.

Section 25(b)(4) of the CEA states:

> A person seeking to enforce liability under this section must establish that the registered entity[,] registered futures association, director, governor, committee member, or employee acted in bad faith in failing to take action or in taking such action as was then taken, and that such failure or action caused the loss.

7 U.S.C. § 25(b)(4).

However, these two provisions are not necessarily in conflict. Section 25(b)(4) requires a finding of bad faith, and section 2(a)(1)(B) does not do away with this requirement. Rather, it allows this bad faith to be imputed from an agent acting within the scope of employment to the principal. Eisler's bad faith can thus properly be imputed to NYFE and the Settlement Committee.

■■■ "When two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *FCC v. NextWave Pers. Communications, Inc.*, 537 U.S. 293, 123 S.Ct. 832, 840, 154 L.Ed.2d 863 (2003) (*quoting J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143–44, 122 S.Ct. 593, 151 L.Ed.2d 508 (2001)). "[T]he only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *J.E.M.*, 534 U.S. at 141–42, 122 S.Ct. 593. Here, Congress did not explicitly override section 2(a)(1)(B), the two statutes are not irrecon-

---

1. Contrary to what the NYBOT Defendants allege, the Opinion does not impute Eisler's actions "to all of the NYBOT Defendants." (N.Y.BOT Defs.' Mem. at 6 n. 3.) Rather, it states that they would be liable for Eisler's acts "as long as Eisler served as their agent." *DGM I* at 262. It then concludes that since Plaintiffs "do not allege any relationship between Eisler and NYFE's affiliates, NYBOT and NYCC, and other individual NYBOT Defendants," "Eisler's conduct can only be imputed to NYFE and the Settlement Committee." *Id.*

cilable, and the NYBOT Defendants cite to no authorities that have held otherwise.

### B. *Plaintiffs' Bad Faith Claims Do Not Rest Solely on Conclusory Allegations*

■ The NYBOT Defendants next argue that the Court's decision to sustain plaintiffs' bad faith claims rests solely on general allegations that "the controlling board members of each Defendant had a personal interest in the P–Tech Futures Options contracts market." *DGM I* at 261 (citing Compl. at 62, 79).

The Opinion states:

Defendants concede that six board members of NYFE traded the P–Tech for their own accounts or an account they controlled in the period from August 1999 to May 2000 (Goodwin Aff.), and, upon information and belief, Plaintiffs maintain that the board members of the other defendants did also.

*DGM I* at 261. The Opinion further concludes that the NYBOT Defendants' acknowledgment that six board members of NYFE traded the P–Tech for their own accounts "in conjunction with Plaintiff's allegation of knowledge of manipulation by the NYBOT Defendants, makes it likely that more than mere negligence and inattention took place." *Id.*

The NYBOT Defendants argue that the plaintiffs' allegations are conclusory and insufficient to assert bad faith since they fail to identify any specific defendant who traded in P–Tech; only 6 of 17 members of the NYFE board had any interest in the P–Tech market;[2] and there are no specific allegations regarding the other defendants. However, under *Sam Wong*, "having shown some financial interests," plaintiffs

are "entitled to limited discovery as to just what interests the defendants had and as to what actually occurred ... however unlikely that this probing will be fruitful." *Sam Wong & Son, Inc. v. New York Mercantile Exch.*, 735 F.2d 653, 678 (2d Cir. 1984). Contrary to what the NYBOT Defendants seem to indicate, it is the Second Circuit's *Sam Wong* opinion, which affirmed in part and reversed in part *Jordon v. New York Mercantile Exch.*, 571 F.Supp. 1530 (S.D.N.Y.1983), that is controlling and not the other way around.

The NYBOT Defendants additionally argue that unlike in *Sam Wong*, further discovery would not help the plaintiffs. They claim that the Goodwin affidavit sets forth the full extent and scope of any of the NYBOT Defendants' trading on the P–Tech market, and none of the board members of NYBOT or NYCC ever had any interest in P–Tech. In fact, the NYBOT Defendants claim that since they have already come forward with the necessary facts, the Court should have converted the motion to dismiss to a summary judgment motion and granted summary judgment in their favor.

Plaintiffs, however, respond that the allegations made in the Goodwin affidavit are solely within the knowledge of the NYBOT Defendants, and they do not have access to the results of the NYBOT Defendants' internal investigations and analyses in order to evaluate these allegations. It is, therefore, premature to conclude that these facts are uncontested.

### C. *CEA Claims Are Not Limited to Customer/ Broker Relationships*

The NYBOT Defendants additionally argue that the Court's finding that fraud-

---

**2.** Plaintiffs point out that the six members, although not a majority in number, could have the requisite control and domination over the NYFE Board to demonstrate its motivation by self-interest or ulterior motive.

Furthermore, it has already been established that Eisler, as Chairman of NYFE and of the Settlement Committee, had the requisite control to impute his bad faith to NYFE and the Settlement Committee.

based CEA claims are not limited to customer/broker relationships and was based on outdated authority.

The Opinion relies on the Supreme Court's *Curran* case in reaching this holding. *DGM I* at 263 (*citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982)). This case held that "[t]he antifraud provision, § 4b, 7 U.S.C. § 6b, by its own terms makes it unlawful for any person to deceive or defraud any other person in connection with a futures contract," *Curran,* 456 U.S. at 389, 102 S.Ct. 1825, and "exchanges can be held accountable for breaching their statutory duties to enforce their own rules prohibiting price manipulation ... by futures trades who can prove injury from these violations," *id.* at 394, 102 S.Ct. 1825.

The cases cited by the NYBOT Defendants do not hold otherwise. For instance, in *Korwek v. Hunt,* 646 F.Supp. 953, 971 (S.D.N.Y.1986), the defendants contended that claims under CEA § 4b "can be invoked only (1) for fraudulent activities in connection with specific trades made on a plaintiff's behalf and (2) by a customer suing his own broker," and the Southern District Court explicitly stated that "there is some doubt as to the validity of defendants' second limitation." The court further cited "authority for the proposition that CEA § 4b claims are not limited to the broker-customer relation." *Id.* at 972 (*citing Leist v. Simplot,* 638 F.2d 283, 322 (2d Cir.1980)) ("None of the cases recognizing an implied right of action under

§ 4b suggest limitation to the broker-customer relation."). The court did not negate this authority, but rather only concluded that "a claim under Section 4b must allege a connection to a specific futures transaction." *Id.*

 Thus, "plaintiffs under § 4b must be persons defrauded in connection with a futures transaction conducted on their behalf, not simply any person defrauded in connection with a futures contract." *Korwek v. Hunt,* 646 F.Supp. at 972 (*quoting ACLI Int'l Commodity Servs., Inc. v. Banque Populaire Suisse,* 550 F.Supp. 144 (S.D.N.Y.1982)).[3] *See also Michelson v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 619 F.Supp. 727, 740 (S.D.N.Y.1985) (same).[4] Proper plaintiffs are traders of futures for whom a transaction was conducted. This is in line with the language of the statute, which is concerned with fraudulent activity "for or on behalf of any other person." 7 U.S.C. § 6b. The caselaw does not hold that a cause of action for fraud under CEA § 4b cannot proceed against an exchange or that it is limited to the broker/customer context.

## D. *Plaintiffs' State Law Claims Are Dismissed*

The Opinion need not be corrected as it already makes clear that plaintiffs' state law claims have been dismissed. It explains that "Plaintiffs' state law claims for gross negligence and bad faith and *respondeat superior* are preempted by the CEA.... [S]tate law claims alleged by plaintiff here would directly affect trading

---

**3.** In the ACLI case, the court held that the fraud did not violate CEA § 4b because none of the futures contract transactions, in connection with which the alleged fraud occurred, was claimed to have been "for or on behalf of" plaintiff ACLI. Rather, the fraud was alleged to have occurred in connection with transactions conducted "for or on behalf

of" certain customers of ACLI, two of whom were defendants in the case.

**4.** The *Merrill Lynch Futures* case noted that the "primary," not the exclusive, "focus of the statute is on fraud practiced by brokers on their customers." *Merrill Lynch Futures Inc. v. Kelly,* 585 F.Supp. 1245, 1251 (S.D.N.Y. 1984).

on or the operation of a futures market.... These are matters for uniform federal regulation subject to review by the CFTC, not matters for review or adjudication by individual state courts." *DGM I* at 264 (internal quotations omitted). Likewise, the October 17, 2002 opinion held that plaintiffs' "state law claims are preempted by the CEA and should be dismissed with prejudice." *DGM Invs., Inc. v. New York Futures Exch. Inc.*, No. 01 Civ. 11602, 2002 WL 31356362, at *5, 2002 U.S. Dist. LEXIS 19834, at *15 (S.D.N.Y. Oct. 17.2002).

In any case, plaintiffs acknowledge that the Courts' opinions dismissed their state law claims. (Pls.' Opp. Mem. at 12–13.)

## II. *Certification for Interlocutory Appeal Is Denied*

 Certification for interlocutory appeal is denied. Under 28 U.S.C. § 1292(b):

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

This statute is narrow in scope, and "only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Ambris v. Bank of New York*, No. 96 Civ. 0061, 1997 WL 214962, at *1 (S.D.N.Y. Apr.25, 1997) (*quoting Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave, Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir.1990)). Furthermore, district court have "independent and 'unreviewable' authority to deny certi-

fication." *Ryan, Beck & Co., LLC v. Fakih*, 275 F.Supp.2d 393, 396 (E.D.N.Y.2003) (citations omitted).

This case does not involve "a controlling question of law" presenting the "exceptional circumstances" sufficient to justify certification.

### *Conclusion*

The NYBOT Defendants' motion for reconsideration or certification for interlocutory appeal is thereby denied.

It is so ordered.